UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

Holding a Criminal Term
Grand Jury Sworn in on August 1, 2024

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CASE NO. 24-mj-382** |
| | : | |
| v. | : | **GRAND JURY ORIGINAL** |
| | : | |
| **JEAN ROBERT CASIMIR,** | : | **VIOLATIONS:** |
| | : | |
| Defendant. | : | 18 U.S.C. § 371 |
| | : | (Conspiracy) |
| | : | |
| | : | 50 U.S.C. § 4819 |
| | : | (Export Control Reform Act) |
| | : | |
| | : | 18 U.S.C. § 554 (Smuggling) |

## INDICTMENT

The Grand Jury charges that, at all times material to this Indictment, on or about the dates stated below:

### The Defendant

1.  Defendant **JEAN ROBERT CASIMIR** ("**CASIMIR**") is a naturalized U.S. citizen from Haiti who resided near West Palm Beach, Florida.

### Legal Background

#### *The Export Control Reform Act of 2018*

2.  The Export Control Reform Act of 2018 ("ECRA") provides, among its stated policy objectives, that the national security and foreign policy of the United States require that the export, reexport and in-country transfer of items . . . be controlled." 50 U.S.C. § 4811(2). To that end, ECRA grants the President the authority "to control . . . the export, reexport, and in-country transfer of items subject to the jurisdiction of the United States, whether by United States persons or by

1

foreign persons." *Id.* § 4812(a). ECRA further grants the Secretary of Commerce the authority to establish the applicable regulatory framework.

3. Pursuant to that and prior authority, the Department of Commerce's Bureau of Industry and Security ("BIS") reviews and controls the export of certain items, including goods, software, and technologies, from the United States to foreign countries through the Export Administration Regulations ("EAR"). BIS is located in the District of Columbia.

4. In particular, the EAR restrict the export of items that could make a significant contribution to the military potential of other nations or that could be detrimental to the foreign policy or national security of the United States. The EAR impose licensing and other requirements for certain items to be lawfully exported from the United States or lawfully reexported from one foreign destination to another. Pursuant to ECRA, any person who willfully commits, attempts to commit, or conspires to commit, or aids or abets in the commission of a violation of any regulation, order, license, or other authorization issued under ECRA shall be guilty of a crime.

5. The most sensitive items subject to EAR controls are identified on the Commerce Control List ("CCL"), published at 15 C.F.R. part 774, Supp. No. 1. Items on the CCL are categorized by an Export Control Classification Number ("ECCN") based on their technical characteristics. Each ECCN has export control requirements depending on the destination, end user, and end use.

6. Between March 9, 2020, and May 29, 2024, non-automatic and semi-automatic firearms equal to .50 caliber (12.7 mm) or less were controlled under ECCN 0A501.a. Firearms controlled under ECCN 0A501.a were controlled for national security, regional stability, and anti-terrorism reasons, and required a license for export to Haiti.

7. On May 30, 2024, an Interim Final Rule changed certain CCL designations for

firearms. Relevant here, after May 30, 2024, firearms are controlled under ECCN 0A501, shotguns are controlled under ECCN 0A502, semi-automatic rifles equal to .50 caliber or less are controlled under ECCN 0A506, and semi-automatic pistols equal to .50 caliber or less are controlled under ECCN 0A507. The firearms designated under these ECCNs are all controlled for national security, regional stability, firearms convention, crime control, and anti-terrorism reasons, and continue to require a license for export or reexport from the United States to Haiti.

8. Accordingly, at all times relevant to this Indictment, a license from BIS was required to export any of the above firearms from the United States to Haiti.

## COUNT ONE
### (Conspiracy)

9. The allegations in paragraphs 1 through 8 are realleged and incorporated here by reference.

10. Between in or about July 2020 and on or about December 18, 2024, within the District of Columbia and elsewhere, the defendant, **JEAN ROBERT CASIMIR**, did knowingly and willfully conspire, combine, confederate, and agree together with others known and unknown to the Grand Jury, to export and cause the exportation of goods from the United States to Haiti, without having first obtained the required licenses from the Department of Commerce, Bureau of Industry and Security ("BIS"), which is located in the District of Columbia, in violation of Title 50, United States Code, Section 4819, and to fraudulently and knowingly export or send goods from the United States to Haiti contrary to laws and regulations, in violation of Title 18, United States Code, Section 554.

### Purpose of the Conspiracy

11. The purpose of the conspiracy was for CASIMIR and others to export firearms from the United States to Haiti without the required licenses from BIS in order to profit from the sale of

those firearms in Haiti, and to conceal the purpose of the conspiracy and the acts committed in furtherance thereof.

## Manner and Means

12. Defendant CASIMIR and other co-conspirators, whose identities are known and unknown to the Grand Jury, carried out the conspiracy through the following manner and means, among others:

   a. Acquiring firearms from lawful and unlawful sources in the United States;

   b. Communicating with potential firearms sellers in the United States and with potential firearms buyers in Haiti using encrypted messaging applications;

   c. Sending and receiving payment for firearms through bank transfers and cash transfers;

   d. Purchasing items, including air compressors, for use in smuggling firearms from the United States to Haiti;

   e. Disassembling and packaging firearms inside other items, including air compressors, to smuggle firearms from the United States to Haiti; and

   f. Failing to obtain the required licenses from BIS for the export of firearms from the United States to Haiti.

## Overt Acts in Furtherance of the Conspiracy

13. In furtherance of the conspiracy and to affect the objects of the conspiracy, the following overt acts, among others, were committed in the District of Columbia and elsewhere:

   a. Between in or around July 2020 and in or around May 2024, CASIMIR used an encrypted messaging application to communicate with U.S. Person 1 regarding the purchase of firearms for export to Haiti, including the purchase of one Glock pistol

and five AR-15 style rifles in or around January 2024.

b. Between in or around August 2020 and in or around August 2024, CASIMIR used an encrypted messaging application to communicate with Haitian Person 2 regarding the sale of firearms to Haitian Person 2 in Haiti.

c. Between in or around August 2020 and in or around March 2024, CASIMIR used an encrypted messaging application to communicate with Haitian Person 3 regarding the sale of firearms to Haitian Person 3 in Haiti.

d. Between in or around November 2020 and in or around August 2024, CASIMR used an encrypted messaging application to communicate with U.S. Person 2 regarding the export of firearms from the United States to Haiti. Among those communications, CASIMIR discussed the disassembly and packaging of various firearms inside two large air compressors to smuggle the firearms to Haiti between in or around January 2024 and in or around August 2024.

e. Between in or around October 2021 and in or around May 2024, CASIMIR purchased at least 87 firearms in at least 30 separate transactions from U.S. Company 1, including rifles, pistols, and shotguns of various makes and models.

f. In or around March 2023, CASIMIR received funds via wire transfer from Haitian Person 1 as payment for firearms CASIMIR had exported to Haiti for Haitian Person 1.

g. Between in or around May and in or around June 2024, CASIMIR purchased at least six AR-15 style upper receiver assemblies from U.S. Company 2.

h. Between in or about September 2023 and in or about August 2024, CASIMIR used an encrypted messaging application to communicate with U.S. Person 3 regarding

the export of firearms from the United States to Haiti. Among those communications, CASIMIR discussed arranging a shipment of firearms from the United States to Haiti on or about January 4, 2024.

i. In or about October 2023, CASIMIR purchased eight semi-automatic rifles from U.S. Company 1, a firearms dealer with a Federal Firearms License near West Palm Beach, Florida.

**(Conspiracy to Commit Smuggling and Violate ECRA**, in violation of Title 18, United States Code, Section 371; Title 18, United States Code, Section 554; Title 50, United States Code, Section 4819)

## COUNT TWO
### (Export Control Reform Act)

14. The allegations in paragraphs 1 through 14 are realleged and incorporated here by reference.

15. On or about January 4, 2024, in the District of Columbia and elsewhere, the defendant, **JEAN ROBERT CASIMIR** and others known and unknown to the Grand Jury did knowingly and willfully export and cause to be exported, and attempt to export and cause to be exported, firearms from the United States to Haiti, without having first obtained the required licenses from the Department of Commerce, Bureau of Industry and Security, which is located in the District of Columbia.

**(Export Control Reform Act**, in violation of Title 50, United States Code, Section 4819)

## COUNT THREE
### (Smuggling)

16. The allegations in paragraphs 1 through 14 are realleged and incorporated here by reference.

17. On or about January 4, 2024, in the District of Columbia and elsewhere, the defendant, **JEAN ROBERT CASIMIR** and others known and unknown to the Grand Jury did

6

fraudulently and knowingly export and send, and attempt to export and send, firearms from the United States to Haiti, contrary to laws and regulations, that is, the Export Control Reform Act, Title 50, United States Code, Sections 4801-4852, and the Export Administration Regulations, 15 C.F.R. Parts 730-774, and received, concealed, bought, sold, and facilitated the transportation, concealment, and sale of such firearms, prior to exportation, knowing the same to be intended for exportation contrary to such laws and regulations.

(**Smuggling**, in violation of Title 18, United States Code, Sections 554 and 2)

## FORFEITURE ALLEGATIONS

18. The allegations contained in Counts One through Three of this Indictment are hereby realleged and incorporated by reference for the purpose of alleging forfeitures pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c).

19. Upon conviction of the offenses alleged in Counts One through Three of this Indictment, the defendant, **JEAN ROBERT CASIMIR**, shall forfeit to the United States any property, real or personal, which constitutes, or is derived from proceeds traceable to this offense, pursuant to Title 18, United States Code, Section 981(a)(1)(A) & (C), and Title 28, United States Code, Section 2461(c). The United States will also seek a forfeiture money judgment for a sum of money equal to the value of any property, real or personal, which constitutes, or is derived from proceeds traceable to this offense.

20. The allegations contained in Count Two of this Indictment are hereby realleged and incorporated by reference for the purpose of alleging forfeitures pursuant to Title 50, United States Code, Sections 4819(d)(1)(A), (B), and (C).

21. Upon conviction of the offense in violation of Title 50, United States Code, Section 4819 set forth in Count Two of this Indictment, the defendant, **JEAN ROBERT CASIMIR**, shall

forfeit to the United States of America, pursuant to Title 50, United States Code, Sections 4819(d)(1)(A), (B), and (C), any property, used or intended to be used, in any manner, to commit or facilitate the violation; any property constituting or traceable to the gross proceeds taken, obtained, or retained, in connection with or as a result of the violation; or any property constituting an item or technology that is exported or intended to be exported in in violation of the charged offense.

22. Upon conviction of the offenses alleged in Counts One through Three of this Indictment, defendant shall forfeit to the United States arms or munitions of war or other articles and any vessel, vehicle, or aircraft containing the same or which has been used in exporting or attempting to export such arms or munitions of war or other articles relating to these offenses, pursuant to Title 22, United States Code, Section 401 and Title 28, United States Code, Section 2461(c).

23. The property to be forfeited includes, but is not limited to, the following:

    a. Shield Arms SAO-15 Rifle, serial number SA015-53638;

    b. Sig Sauer P320 Pistol, serial number 58J490649;

    c. $20,000 in United States Currency.

24. In the event of conviction, the United States may seek a money judgment.

25. If any of the property described above, as a result of any act or omission of the defendant:

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third party;

    c. has been placed beyond the jurisdiction of the court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c).

A TRUE BILL

FOREPERSON

EDWARD R. MARTIN
U.S. ATTORNEY FOR THE UNITED STATES
IN AND FOR THE DISTRICT OF COLUMBIA