**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| | : |
| v. | : |
| | :      **Case No.: 25-cr-24 (RC)** |
| | : |
| JEAN ROBERT CASIMIR, | : |
| | : |
| Defendant. | : |

### STATEMENT OF OFFENSE

Pursuant to Fed. R. Crim. P. 11, the United States of America, by and through its attorney, the United States Attorney for the District of Columbia, and the defendant, **JEAN ROBERT CASIMIR**, with the concurrence of his attorney, agree and stipulate to the below factual basis for the defendant's guilty plea – that is, if this case were to proceed to trial, the parties stipulate that the United States could prove the below facts beyond a reasonable doubt:

### STATUTES AND REGULATIONS

#### *The Export Control Reform Act and the Export Administration Regulations*

1.	The Export Control Reform Act of 2018 ("ECRA") provides, among its stated policy objectives, that the national security and foreign policy of the United States require that the export, reexport and in-country transfer of items . . . be controlled." 50 U.S.C. § 4811(2). To that end, ECRA grants the President the authority "to control . . . the export, reexport, and in-country transfer of items subject to the jurisdiction of the United States, whether by United States persons or by foreign persons." *Id.* § 4812(a). ECRA further grants the Secretary of Commerce the authority to establish the applicable regulatory framework.

2.	Pursuant to that and prior authority, the Department of Commerce's Bureau of Industry and Security ("BIS") reviews and controls the export of certain items, including goods, software, and technologies, from the United States to foreign countries through the Export

Administration Regulations ("EAR"). BIS is located in the District of Columbia.

3.    In particular, the EAR restrict the export of items that could make a significant contribution to the military potential of other nations or that could be detrimental to the foreign policy or national security of the United States. The EAR impose licensing and other requirements for certain items to be lawfully exported from the United States or lawfully reexported from one foreign destination to another. Pursuant to ECRA, any person who willfully commits, attempts to commit, or conspires to commit, or aids or abets in the commission of a violation of any regulation, order, license, or other authorization issued under ECRA shall be guilty of a crime.

4.    The most sensitive items subject to EAR controls are identified on the Commerce Control List ("CCL"), published at 15 C.F.R. part 774, Supp. No. 1. Items on the CCL are categorized by an Export Control Classification Number ("ECCN") based on their technical characteristics. Each ECCN has export control requirements depending on the destination, end user, and end use.

5.    Between March 9, 2020, and May 29, 2024, non-automatic and semi-automatic firearms equal to .50 caliber (12.7 mm) or less were controlled under ECCN 0A501.a. Firearms controlled under ECCN 0A501.a were controlled for national security, regional stability, and anti-terrorism reasons, and required a license for export to Haiti.

6.    On May 30, 2024, an Interim Final Rule changed certain CCL designations for firearms. Relevant here, after May 30, 2024, firearms are controlled under ECCN 0A501, shotguns are controlled under ECCN 0A502, semi-automatic rifles equal to .50 caliber or less are controlled under ECCN 0A506, and semi-automatic pistols equal to .50 caliber or less are controlled under ECCN 0A507. The firearms designated under these ECCNs are all controlled for national security, regional stability, firearms convention, crime control, and anti-terrorism reasons, and continue to

2

require a license for export or reexport from the United States to Haiti.

7.    Accordingly, at all times relevant to the conduct described herein, a license from BIS was required to export any of the above firearms from the United States to Haiti.

### *Smuggling*

8.    Title 18, United States Code, Section 554 makes it illegal to export an item in violation of another law, including the ECRA, and also makes it illegal to purchase, store, sell. or conceal any item intended for illegal export from the United States. Specifically, Section 554(a) provides: "Whoever fraudulently or knowingly exports or sends from the United States, or attempts to export or send from the United States, any merchandise, article, or object contrary to any law or regulation of the United States, or receives, conceals. buys, sells, or in any manner facilitates the transportation, concealment, or sale of such merchandise, article or object, prior to exportation, knowing the same to be intended for exportation contrary to any law or regulation of the United States," shall be subject to criminal penalties. Violations of Section 554 are punishable by a prison term of up to 10 years. 18 U.S.C. § 554(a).

### **Smuggling Firearms from the United States to Haiti**

### *The Defendant*

9.    Defendant **JEAN ROBERT CASIMIR ("CASIMIR")** is a naturalized U.S. citizen from Haiti who resided near West Palm Beach, Florida.

### *The Conspiracy*

10.    Between in or about August 2020 and on or about December 18, 2024, within the District of Columbia and elsewhere, **CASIMIR** did knowingly ar.d willfully conspire, combine, confederate, and agree together with others to export and cause the exportation of goods from the United States to Haiti, without having first obtained the required licenses from BIS, in violation of

3

Title 50, United States Code, Section 4819, and to fraudulently and knowingly export or send goods from the United States to Haiti contrary to laws and regulations, in violation of Title 18, United States Code, Section 554.

### *Purpose of the Conspiracy*

11.     The purpose of the conspiracy was for **CASIMIR** and others to export firearms from the United States to Haiti without the required licenses from BIS in order to profit from the sale of those firearms in Haiti, and to conceal the purpose of the conspiracy and the acts committed in furtherance thereof.

### *Manner and Means*

12.     Defendant **CASIMIR** and other co-conspirators carried out the conspiracy through the following manner and means, among others:

a.  Acquiring firearms from lawful and unlawful sources in the United States;

b.  Communicating with potential firearms sellers in the United States and with potential firearms buyers in Haiti using encrypted messaging applications;

c.  Sending and receiving payment for firearms through bank transfers and cash transfers;

d.  Purchasing items, including air compressors, for use in smuggling firearms from the United States to Haiti;

e.  Disassembling and packaging firearms inside other items, including air compressors, to smuggle firearms from the United States to Haiti; and

f.  Failing to obtain the required licenses from BIS for the export of firearms from the United States to Haiti.

4

*Overt Acts in Furtherance of the Conspiracy*

13.    In furtherance of the conspiracy and to affect the objects of the conspiracy, the following overt acts, among others, were committed in the District of Columbia and elsewhere:

a. Between in or around July 2020 and in or around May 2024, **CASIMIR** used an encrypted messaging application to communicate with U.S. Person 1 regarding the purchase of firearms for export to Haiti, including the purchase of two Glock pistols and one revolver in or around March 2023.

b. Between in or around August 2020 and in or around August 2024, **CASIMIR** used an encrypted messaging application to communicate with Haitian Person 2 regarding the sale of firearms to Haitian Person 2 in Haiti.

c. Between in or around August 2020 and in or around March 2024, **CASIMIR** used an encrypted messaging application to communicate with Haitian Person 3 regarding the sale of firearms to Haitian Person 3 in Haiti.

d. Between in or around November 2020 and in or around August 2024, **CASIMIR** used an encrypted messaging application to communicate with U.S. Person 2 regarding the export of firearms from the United States to Haiti. Among those communications, CASIMIR discussed the disassembly and packaging of various firearms inside two large air compressors to smuggle the firearms to Haiti between in or around January 2024 and in or around August 2024.

e. Between in or around October 2021 and in or around May 2024, **CASIMIR** purchased at least 87 firearms in at least 30 separate transactions from U.S. Company 1, including rifles, pistols, and shotguns of various makes and models.

f. In or around March 2023, **CASIMIR** received funds via wire transfer from Haitian

5

Person 1 as payment for firearms **CASIMIR** had exported to Haiti for Haitian Person 1.

g. Between in or around May and in or around June 2024, **CASIMIR** purchased at least six AR-15 style upper receiver assemblies from U.S. Company 2.

h. Between in or about September 2023 and in or about August 2024, **CASIMIR** used an encrypted messaging application to communicate with U.S. Person 3 regarding the export of firearms from the United States to Haiti. Among those communications, **CASIMIR** discussed arranging a shipment of firearms from the United States to Haiti on or about January 4, 2024.

i. In or about October 2023, **CASIMIR** purchased two semi-automatic rifles from a firearms dealer with a Federal Firearms License near West Palm Beach, Florida.

### *CASIMIR Smuggled A Total at Least Approximately 140 Firearms to Haiti Since 2020*

14. In total, between approximately in or about August 2020 and in or about December 2024, **CASIMIR** purchased at least approximately 140 firearms in the United States that he then exported to Haiti without a license from BIS. In particular, between approximately in or about August 2020 and in or about December 2024, **CASIMIR** purchased at least 108 firearms from Federal Firearms Licensees and purchased at least approximately 30 to 35 firearms from U.S. Person 1, all of which CASIMIR exported to Haiti without a license from BIS.

### *CASIMIR Failed to Obtain a License*

15. At all times relevant to the conduct described herein, the firearms **CASIMIR** purchased required a license from BIS for export to Haiti. No individual involved in these transactions at any time, including **CASIMIR**, possessed a license for the export of these firearms from BIS.

6

Respectfully submitted,

JEANINE FERRIS PIRRO
United States Attorney

ARIEL DEAN
D.C. 90003803
Assistant United States Attorney
National Security Section
601 D Street, N.W.
Washington, D.C.  20530
(202) 252-6764
Ariel.dean@usdoj.gov

JOHN A. EISENBERG
Assistant Attorney General for National Security

BEAU D. BARNES
D.C. Bar No. 1024156
Trial Attorney
Counterintelligence and Export Control Section
National Security Division
U.S. Department of Justice
950 Pennsylvania Avenue NW
Washington, D.C.  20530
(202) 305-4679
beaudre.barnes@usdoj.gov

7

## DEFENDANT'S ACKNOWLEDGEMENT

I, Jean Robert Casimir, have read this Statement of the Offense and have discussed it with my attorney. I fully understand this Statement of the Offense. I agree and acknowledge by my signature that this Statement of the Offense is true and accurate. I do this voluntarily and of my own free will. No threats have been made to me nor am I under the influence of anything that could impede my ability to understand this Statement of the Offense fully.

Date: 7/7/26

Jean Robert Casimir
Defendant

## ATTORNEY'S ACKNOWLEDGEMENT

I have read this Statement of the Offense and have reviewed it with my client fully. I concur in my client's desire to adopt this Statement of the Offense as true and accurate.

Date: 7-7-26

Alfred Guillaume
Attorney for Defendant